MOUNT GILEAD COTTON OIL COMPANY v. WESTERN UNION
TELEGRAPH COMPANY.

(Filed 31 May, 1916.)

1. Telegraphs—Vendor and Purchaser—Principal and Agent—Contracts—
   Negligence—Damages.

   Where according to custom between the parties the sendee of a telegram purchased on his own account cotton seed to be shipped to the sender at a price stated in the message, but by reason of an error in its transmission he had purchased to sell at a higher price than that actually authorized, the telegraph company cannot be considered the agent of the sender in making the contract, or bound by the terms of the erroneous telegram, when the sender has before shipment ascertained the error in the telegram, and voluntarily pays for the seed at the higher price, and he may not recover, in his action against the company, the difference between the price authorized and that negligently stated in the telegram, but only nominal damages, or the cost of the message. As to whether substantial damages could be recovered had the seed been accepted without knowledge of the error, and damages had been sustained by the sender, with no means of recouping his loss, *quære.*

45—171

**2. Same—Extra Expense.**

 In this action it is *Held*, that the sender of a telegram erroneously transmitted as to the price offered for cotton seed may not recover, as an element of damages, money expended on certain trips taken, as they in no wise referred to the subject of his action nor were they connected therewith.

**3. Telegraphs—Vendor and Purchaser—Principal and Agent—Negligence—Damages—Duty of Sender.**

 It is the duty of the sender of a telegram, which has erroneously been transmitted, to his knowledge, to minimize the loss resulting to him, whether arising by contract or in tort; and where the telegram was for the purchase of cotton seed, he may not voluntarily enter into a new contract at the erroneously stated price, when he might have refused to take the seed, and then hold the telegraph company to the payment of his loss.

CIVIL ACTION tried before *Lane, J.,* and a jury, at September Term, 1915, of MONTGOMERY.

The action was to recover damages caused by erroneous transmission of a telegram making an offer for purchase of cotton seed.

On the testimony, the court ruled that plaintiff's recovery was restricted to nominal damages or amount tendered therefor by defendant, to wit, 41 cents. Judgment for this amount, and plaintiff excepted and appealed.

 *Chas. A. Armstrong for plaintiff.*
 *J. A. Spence for defendant.*

HOKE, J. The evidence tended to show that, on 1 October, 1914, plaintiff, doing business at Mount Gilead, N. C., delivered to defendant company for transmission to John Kearns, at Wagram, N. C., a message offering $20 per ton for cotton seed, and requiring immediate acceptance; that under the arrangement between plaintiff and Kearns the latter was to buy the seed at his own price and sell to plaintiff at the price offered; that the message was erroneously delivered: "twenty-two" instead of twenty, making an error of $2 per ton; that, acting on the erroneous message, Kearns bought or contracted for immediate delivery of four car-loads of seed, part of which were in the cars at Wagram, when the plaintiff's agent and manager, having occasion next day to go to Wagram, and ascertaining that the mistake had occurred, countermanded the order as to further purchases, paid Kearns for the seed already bought or contracted for at the price of $22, and brought suit against the company, claiming as damage the excess of $2 per ton paid or contracted for by Kearns by reason of the mistaken message, the damages so estimated amounting to $220.34.

On these the facts chiefly relevant, we are of opinion that his Honor correctly held that plaintiff could only recover nominal damages, or the amount for which judgment had been tendered by defendant, of 41 cents.

There is much contrariety of decision on the question whether a telegraph company may be properly considered the agent of a sender so as to bind him by a contract made in his name or for his benefit by reason of a message which has been erroneously transmitted. In this jurisdiction it is held that the company, in such case and to that extent, is not the agent of the sender; that the latter is not bound by the terms of the erroneous message, and, unless otherwise in default, may not be held responsible for the effects of it. *Pegram v. Tel. Co.,* 100 N. C., 28. The position has the support of authoritative and well considered cases in other jurisdictions: *Pepper v. Tel. Co.,* 87 Tenn., 554; *Shingleur v. Tel. Co.,* 72 Miss., 1030; *Strong v. Tel. Co.,* 18 Idaho, 389; is said to be in accord with the English and Canadian decisions on the subject, and, in a recent work on electricity, after a full discussion of the subject, it is approved by the authors as the better rule. Joyce on Electricity (2 Ed.), sec. 907. It is said by some of the text-writers that the opposing position is supported by the weight of authority in the American courts, a statement that is examined and combated, successfully, we think, by *Judge Folkes* in his learned and forcible opinion in *Pepper's case,* to which we have heretofore referred.

The American cases which uphold the view that the company is to be properly considered the sender's agent for the purpose and to the extent indicated are made to rest chiefly on the proposition that, as the sender first resorted to this means of communication, he should be held to bear the loss arising from the company's negligent breach of duty; but this, to our minds, is very far from satisfactory. As a matter of fact, we know that neither the sender nor the addressee has any control over the operations of the company or its methods. Both are equally aware of its liability to mistakes and the extent of them, and both have equal opportunity to verify the message by repetition, etc., and it seems to us that the doctrine which undertakes to hold the sender liable under the ordinary principles of agency is unsound, and that the position as it prevails with us and which considers the company as a public-service agency, acting, in the respect suggested, independently of either, has the better reason, and, certainly, as now advised, we have no present disposition to question it. This, then, being in our opinion the correct principle, on the facts presented in the record, his Honor correctly held that plaintiff was restricted to nominal damages or, at most, to the price of the message.

It is not at all clear that any of the seed had been delivered when the mistake was discovered; but if it were otherwise, and four car-loads of seed were then in the cars at Wagram ready for shipment, these seed, purchased at $22 per ton, were not the seed that plaintiff had ordered, and he had then the legal right to reject and return them to addressee

of the message. The latter could have recovered of the company the damage incident to their culpable mistake. But plaintiff, having with full notice elected to take the seed at the higher price when not legally obligated to do so, has thereby entered into a new contract concerning them, and is not now in a position to sue the company because of its breach of contract with him.

It is the recognized position that in case of breach of contract or of tort, the injured party must do what reasonable business prudence required to minimize his damage. *Hocutt v. Tel. Co.*, 147 N. C., 137; *Bowen v. King*, 146 N. C., 391; *Tillinghast v. Cotton Mills*, 143 N. C., 268; *R. R. v. Hardware Co.*, 143 N. C., 54, and *a fortiori* where, in such case, the injured party, the plaintiff in this instance, has voluntarily paid the higher price for the seed when he was not compelled to do so, he has no legal right to insist on such payment as an element of damage.

It may be that if, before the mistake was discovered, plaintiff had received and disposed of the seed, and conditions were such that he had no means of recoupment for his loss, a case might be presented for recovery of such damages, as naturally arising from the company's breach of contract; but no such case is presented in this record, the facts showing that the seed or a portion of them were then in the cars at Wagram and the remainder subsequently delivered and voluntarily taken over, as stated, by plaintiff at the higher price.

It was insisted for plaintiff that he was in any event entitled to recover for certain money expended as incident to his trip to Wagram and his effort to avoid the effects of the mistake in other localities, but we are unable to see that the trip to Wagram was in any way due to the erroneous message or that plaintiff's efforts in reference to the effect of the message in other localities had any legal or sufficient connection with the defendant's default as to constitute a legitimate element of damages.

There is no error in the record, and the judgment below must be affirmed.

No error.